THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT F. WHITE, Defendant-Appellant.

First District (5th Division)    No. 79-312

Opinion filed June 6, 1980.—Supplemental opinion filed on denial of rehearing
July 25, 1980.

20

James J. Doherty, Public Defender, of Chicago (Timothy K. McMorrow and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Kevin W. Horan, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged with indecent liberties with a child (Ill. Rev. Stat. 1977, ch. 38, par. 11—4) and attempted aggravated incest (Ill. Rev. Stat. 1977, ch. 38, par. 8—4). Following a jury trial, defendant was

convicted of indecent liberties with·a child and acquitted of attempted aggravated incest and was sentenced to six years in the penitentiary.

On appeal, he raises five issues: (1) the trial court erred in allowing the use of his prior conviction for impeachment purposes; (2) he was denied his constitutional right to the equal protection of the laws when he was more severely sentenced for the convicted crime than he could have been sentenced for the more serious crime for which he was acquitted; (3) the trial court erred in refusing a defense instruction on contributing to the sexual delinquency of a child; (4) he was deprived of a fair trial by prejudicial arguments made by the prosecution; and (5) his sentence is excessive.

On April 5, 1978, at about 4 p.m., the female child, eight years old, and her mother, Mary White, met with Sergeant James Holous at the Hodgkins, Illinois, police department. White informed Holous that defendant had attempted to rape her step-daughter, and had fondled her vaginal area. Later, Holous and White took the child to the hospital to be checked for evidence of rape. Before they received the results of the hospital tests, the three returned to the police department and conversed with Assistant State's Attorney Paul Kelly. Holous and Kelly then went to the apartment where defendant, the child and White resided. According to Holous, defendant told him the following:

> "He was home watching television and the child came home from school, she went into the bathroom to change, she came back out into the living room naked, and he told her to go back into the bathroom. At that time, he said he went into the bedroom, got a jar of vaseline, came back into the bathroom, told the child to lay down on the ground, then he proceeded to rub vaseline between her legs by her vaginal area, and that he began to fondle her with his finger, and he said he * * * unzipped his pants, pulled his penis out, laid on top of her and began to rub his penis in her vaginal area."

Defendant also told Holous that while he was on top of his step-daughter, his wife came home and "caught" them.

Defendant was placed under arrest at the apartment at about 10:30 p.m. Later that evening at the police station, defendant repeated his earlier statement. He also gave his handwritten version of the incident, which read:

> "I was home watching T.V. when the child came home. I told her to [change] clothes. She went in the bedroom and·took her pants off and came back in the living room with nothing on, then went in the bathroom and left the door open. I went in and felt her privates, and then her mother came home."

Doctor Christopher Curran, an expert in obstetrics and gynecology, testified as to his examination of Smith on April 5, 1978. A general examination of the girl revealed evidence of hyperemia, described as "a red appearance of the skin in the area surrounding the vaginal opening." The redness was the result of a "relatively recent trauma," which was at most six to eight hours old and was caused by some type of rubbing action. On cross-examination, he admitted that the injury could have been caused by a number of things including motions brought about by the riding of a bicycle. There were no contusions, lacerations or abrasions found on the girl that evening.

The child testified that on the evening of April 5, 1978, she was at home with her sister, grandmother and defendant. Her mother was at the laundromat. While she was in the washroom washing her hands, defendant came into the room. He took her pants off, opened his "fly," and put Vaseline on himself and on her. As she lay on the floor, defendant got on top of her and then, according to her testimony, "He stuck it in me." Her mother then arrived, picked up the jar of Vaseline, threw it, and took her to the police station and later to the hospital.

On cross-examination, the following colloquy occurred between the child and defense counsel:

"DEFENSE COUNSEL: Bob [defendant] has never hurt you, has he?

THE CHILD: No.

DEFENSE COUNSEL: Bob has never made you cry, has he?

THE CHILD: No.

DEFENSE COUNSEL: Bob didn't do anything to you in the bathroom, did he?

THE CHILD: No."

The defense presented two witnesses as to the child's reputation for veracity and habits of masturbation. Their testimony indicated that she had a bad reputation for truthfulness and that she had been seen masturbating on various occasions after the incident with defendant.

Mary White then testified that on April 5, 1978, at about 3 p.m., she came home from the laundromat, went into the bathroom, and found her daughter sitting on the toilet and defendant standing near the wash basin, about five feet from her daughter. At that point she "went to pieces," grabbed the girl and went to the police station.

On cross-examination, she acknowledged that in an earlier written statement to the police, she stated that she saw defendant zip his pants up as she arrived, and told him: "What are you trying to do to my daughter, trying to rape her?" He told her, "I don't know." She also stated that she "still" loved her husband. When asked whether she would allow defendant to resume his former relationship with her children, she stated,

"Well, I'll have to think about it because my kids are my concern, I love my kids."

Defendant testified on his own behalf. On the afternoon of April 5, 1978, his daughter came out of the bathroom without her clothes on, and he told her to return and put them on. When he went into the bathroom, she was lying on the floor undressed. He noticed that she was red "in her private parts," so he put Vaseline on her, but denied doing it for sexual gratification. He also denied putting Vaseline on himself or touching her with his penis. While he was washing his hands at the wash basin, she got up and sat on the toilet. Then, his wife arrived. After his wife and daughter left, defendant "went back to watching television."

OPINION

Defendant's first contention is that the trial court erred in admitting his 1970 West Virginia conviction for buying and receiving stolen property into evidence. Briefly, defendant asserts that it was an abuse of discretion to allow this into evidence in that it did not involve misrepresentation to other people, it was nearly 10 years old, and that defendant had no subsequent criminal activity.

In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, our supreme court set forth the standards to be used in governing the admissibility of prior convictions for the limited purpose of impeachment. Those standards dictate that evidence of a prior crime may be introduced if: (1) the crime was punishable by death or imprisonment in excess of one year under the law under which defendant was convicted, or (2) the crime involved dishonesty or false statement regardless of the punishment; unless, in either case the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice. Attached to these standards is the provision that evidence of a conviction is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date. *Montgomery*, 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698.

Defendant does not dispute that the offense in question is punishable by imprisonment in excess of one year under West Virginia law, or that it falls within the 10 year time limit of *Montgomery*. However, he does contend that since the crime involves no misrepresentation to others it is only marginally probative as to his honesty.

■■ ■ We recognize that a conviction for theft, *of whatever type*, is admissible to impeach the credibility of a witness. (*People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 568.) The crime of buying and receiving stolen property falls within the broad boundaries of the crime of theft. Moreover, it has been held that a defendant's prior misdemeanor

conviction for receiving stolen property is admissible because the nature of the offense involves dishonesty. (*People v. Barnett* (1975), 34 Ill. App. 3d 174, 340 N.E.2d 116.) Consequently, it cannot be said that defendant's prior conviction was not probative as to aiding the jury in evaluating defendant's truthfulness.

Accordingly, the trial court did not abuse its discretion in denying defendant's motion *in limine* to bar the admission of this evidence at trial.

● 3 Defendant next contends that he was denied his constitutional right to the equal protection of the laws (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) when he was sentenced more severely for the convicted crime of indecent liberties with a child than he could have been sentenced for the "more serious" conduct for which he was acquitted. This claim is premised upon defendant's subjective determination that attempted aggravated incest (Ill. Rev. Stat. 1977, ch. 38, par. 8—4), a Class 3 felony of which he was acquitted, proscribes conduct more "heinous and severe" than indecent liberties with a child (Ill. Rev. Stat. 1977, ch. 38, par. 11—4), a Class 1 felony of which he was convicted. He therefore maintains that this statutory scheme inequitably allows a person convicted of a less egregious offense (indecent liberties with a child) to be sentenced more severely than one convicted of an offense which provides for similar but more reprehensible conduct (attempted aggravated incest).

Our comparison of these two statutes reveals that the only act present in the indecent liberties with a child statute that is not present in the aggravated incest statute is "lewd fondling or touching." Because the jury acquitted defendant of aggravated incest, but convicted him of indecent liberties with a child, their verdict was tantamount to a finding that defendant fondled the victim, but did not attempt to have sexual intercourse with her. From this framework, defendant reasons that he was denied equal protection by being more severely sentenced for fondling his step-daughter than he could have been sentenced for attempting to have sexual intercourse with her, which is by defendant's standards a more heinous crime.

In support of this proposition, defendant relies solely on *People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096. There, defendant was convicted of possession and delivery of a controlled substance. The court found defendant's sentence for possession to be a denial of equal protection because the lesser included offense of possession mandated a higher penalty than did the greater offense of delivery. The court stated:

> "The defendant was given a heavier sentence for possession than could have been imposed upon someone convicted of delivery, *a worse offense*, and was therefore denied the equal protection of the laws." (Emphasis added.) *Natoli*, 70 Ill. App. 3d 131, 139, 387 N.E.2d 1096, 1101-02.

Recently, however, the Illinois Supreme Court held that the *Natoli* court was in error when it concluded that the equal protection clause had been violated. (*People v. Bradley* (1980), 79 Ill. 2d 410.) In *Bradley*, the court concluded that all of the persons charged under the statute prohibiting the manufacture or delivery of controlled substances (Ill. Rev. Stat. 1977, ch. 56½, par. 1401) in *Natoli* constituted members of one class and were treated identically, while all of the persons charged under the possession statute (Ill. Rev. Stat. 1977, ch. 56½, par. 1402) constituted another class and also received uniform treatment.

That rationale is equally compelling in the matter before us. All persons such as defendant, who are found guilty of fondling a child under the offense of indecent liberties with a child, form one class. Each member of that class faces the same range of sentences for that crime and each is treated no differently than any other member of that class. Therefore, we reject defendant's argument that the offense for which he was convicted and sentenced runs afoul of the equal protection guarantees of the State and Federal constitutions.

Defendant also contends that the trial court erred in refusing a defense instruction on the offense of contributing to the sexual delinquency of a child (Ill. Rev. Stat. 1977, ch. 38, par. 11—5) as a lesser-included offense of indecent liberties with a child (Ill. Rev. Stat. 1977, ch. 38, par. 11—4). Defendant asserts that since the conduct complained of falls under the prohibition of either statute, it was reversible error for the trial court to refuse this instruction.

The statute defining the offense of contributing to the sexual delinquency of a child provides:

"(a) Any person of the age of 14 years and upwards who performs or submits to any of the following acts with any person under the age of 18 contributes to the sexual delinquency of a child:

(1) Any act of sexual intercourse; or

(2) Any act of deviate sexual conduct; or

(3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the person or both; or

(4) Any lewd act done in the presence of the child with the intent to arouse or to satisfy the sexual desires of either the person or the child or both.

(b) It shall not be a defense to contributing to the sexual delinquency of a child that the accused reasonably believed the child to be of the age of 18 or upwards.

(c) Sentence.

Contributing to the sexual delinquency of a child is a Class A misdemeanor." (Ill. Rev. Stat. 1977, ch. 38, par. 11—5.)

At the time of the offense, the crime of indecent liberties with a child was defined as follows:

"(a) Any person of the age of 17 years and upwards who performs or submits to any of the following acts with a child under the age of 16 commits indecent liberties with a child:

(1) Any act of sexual intercourse; or

(2) Any act of deviate sexual conduct; or

(3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the person or both.

(b) It shall be an affirmative defense to indecent liberties with a child that:

(1) The accused reasonably believed the child was of the age of 16 or upwards at the time of the act giving rise to the charge; or

(2) The child is a prostitute; or

(3) The child has previously been married.

(c) Sentence.

Indecent liberties with a child is a Class 1 felony for which an offender may not be sentenced to death." Ill. Rev. Stat. 1977, ch. 38, par. 11—4.

A plain reading of these statutes reveals that both prohibit virtually identical conduct. Basically, they differ as to the range of possible sentences, available defenses, and age differentials. The offense of contributing to the sexual delinquency of a child is a Class A misdemeanor, while the crime of indecent liberties with a child is a Class 1 felony. The former has no provision for affirmative defenses, while the latter specifies three affirmative defenses to the crime. The only other variances in the statute are reflected in the age requirements. In the present case, no issue was raised at trial as to the age differentials or as to the affirmative defenses. Therefore, the instructions, on the two offenses, if tendered to the jury, would have been practically identical under the facts in this case.

● 4, 5 Generally, a defendant is entitled to an instruction on a lesser included offense when there is any evidence which tends to prove the lesser *rather than* the greater offense. (See *People v. Williams* (1974), 24 Ill. App. 3d 666, 669, 321 N.E.2d 74, 76.) A lesser included offense instruction usually results from a question of whether or not an element of the major crime has been proven. For instance, in an armed robbery trial, the defense would be entitled to a robbery instruction where a question

existed as to whether the defendant was armed at the time of the offense. But here, as previously mentioned, the two crimes punish virtually identical conduct. Therefore, it would be impossible under the facts in the instant case that the evidence would prove the offense of contributing to the sexual delinquency of a child *rather than* indecent liberties with a child since the conduct with which defendant was charged fits within the prohibitions of either statute. *Williams.*

The trial court properly refused the instruction for a second reason. When the conduct for which a defendant is prosecuted constitutes a misdemeanor under one statute and a felony under another, the State may prosecute him for the felony. (*Keegan*; *People v. Hamelin* (1979), 75 Ill. App. 3d 445, 394 N.E.2d 566.) The giving of a lesser-included offense instruction in the instant case would have had the effect of negating the prosecutor's discretion with respect to whether or not a misdemeanor or felony should be charged. As a representative of the people of this State, the State's Attorney has the responsibility of determining what offense can properly and should properly be charged. (*Keegan.*) The jury does not share this responsibility. Therefore, we find that the requested instruction was properly denied by the trial judge.

Defendant also asserts that the prosecutor engaged in prejudicial arguments to the jury, which denied him a fair trial. According to defendant, the prosecutor argued his wife's prior inconsistent statement and his prior conviction as substantive evidence of his guilt referred to facts not in evidence and appealed to the fears and prejudices of the jury in order to obtain a conviction.

Defendant argues that the statement his wife gave to the police on April 5, 1978, was improperly argued by the prosecutor as substantive evidence of his guilt. His wife testified at trial, that when she arrived home, she saw her daughter sitting on the toilet and her husband standing near the wash basin about five feet away. On cross-examination she admitted that she had earlier told the police that "he [defendant] put Vaseline on himself, told her [the child] to lie down" and "that the child said he [defendant] got on top of her." She also told the police that she had seen defendant zip his pants up, and asked why he was trying to rape his daughter.

The State attempted to introduce this previous written statement into evidence when Officer Holous was on the witness stand. Defendant's objection to this procedure was sustained. Later, at the instruction conference, the court also denied the State's request for the statement to go back to the jury room as an exhibit. Defendant maintains that defense counsel's objection to the State's attempt to publish the statement at trial improperly made the defense appear to the jury as purposely suppressing evidence of defendant's guilt. Along these same lines, defendant asserts

that the prosecutor's unsuccessful attempt at the instruction conference to circumvent the court's earlier ruling demonstrated the deliberateness of their plan.

■■■ A prior inconsistent statement of a witness may be used to impeach her testimony in court (*People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058), but may never be offered as evidence of a defendant's guilt (*People v. Lucas* (1978), 58 Ill. App. 3d 541, 374 N.E.2d 884). Mary White's prior inconsistent statement was properly used by the State to impeach her testimony at trial. Although the State erroneously attempted to introduce the statement into evidence, that request was properly denied by the trial court and no prejudice was caused defendant. Besides sustaining defense counsel's objection to the State's request to read the statement to the jury, the court admonished the jury to disregard such matters in arriving at their verdict. A later jury instruction again reminded the jury to disregard testimony which the court had refused or stricken. These safeguards by the trial court kept the record free from any prejudicial error. (See *People v. Black* (1970), 130 Ill. App. 2d 996, 266 N.E.2d 458, *cert. denied* (1973), 411 U.S. 967, 36 L. Ed. 2d 689, 93 S. Ct. 2155.) The State's second effort to introduce the statement was made out of the jury's presence and was properly denied by the trial court. Therefore, defendant's argument that he was subject to "significant harm" by the State's actions is unconvincing.

Defendant also argues that he was prejudiced when the State commented on his wife's prior inconsistent statement during closing arguments. These remarks occurred during the State's rebuttal arguments and were preceded by defense counsel's argument which suggested to the jury that Mary White's trial testimony was highly credible. Briefly, the prosecutor's comments pointed out the discrepancies between her trial testimony and her earlier written statement, and referred to the latter as a "confession" about what she had "witnessed." The prosecutor's summary of that "confession" included references to Mary White's observation of both defendant and his step-daughter on the floor as she arrived at the scene. Defendant alleges that these comments were unsupported by the evidence and were used as evidence of defendant's guilt.

■■ It is our opinion that the statements were only made to show that this witness had given an earlier statement that differed from her trial testimony, and merely highlighted her lack of credibility. Defendant correctly points out that his wife never testified as to observing defendant on the floor with his daughter, and that the prosecutor erroneously argued facts not in evidence. However, the admonishments and instructions given by the trial court, reminding the jury that the nature of closing arguments was nonevidentiary, removed any prejudicial impact that the prosecutor's misstatement of testimony may have carried. In addition, we find that the evidence against defendant proves his guilt beyond a

reasonable doubt without reference to Mary White's statement. The testimony of the victim as well as defendant's two oral admissions and one written admission convinced the jury of defendant's culpability for the offense of indecent liberties with a child. Therefore, the prosecutor's erroneous references to Mary White's statements are harmless beyond a reasonable doubt. See *People v. Lucas* (1978), 58 Ill. App. 3d 541, 374 N.E.2d 884.

Defendant challenges similar comments made by the prosecutor in his opening statements. In those introductory remarks, the prosecutor asserted that the evidence would show that "she [Mary White] saw her husband lying there with his penis out, on top of her daughter." At trial, Officer Holous testified that defendant admitted pulling his penis out and rubbing it in his step-daughter's vaginal area, and to being "caught" by his wife. Also, the child testified that defendant not only had his penis out, but was having sexual intercourse with her when her mother arrived. We therefore find that the comments are supported by the record and constituted a good-faith inference about the testimony that the prosecutor expected from the State's witness.

Defendant's remaining objections to the prosecutor's arguments involve alleged improper remarks made as to his prior conviction, to comments which implied that he attempted to flee from the scene of the incident and to an "emotional plea" made to the jury by the State.

In rebuttal argument, the prosecutor referred to defendant's oral statement before trial by stating:

"He said that he put his hands between her legs and rubbed her vagina, but I didn't rape her. Oh, no, I didn't rape her. But I did this as an act. *This ex-felon has become a little smarter as the years go by.* He says just enough because he has been kind of boxed in, he knows, he talked to his wife on the phone, he knows what his wife is going to do." (Emphasis added.)

Defendant contends that this argument was improperly offered to show his cunning and propensity to commit crime rather than for impeachment purposes. We disagree.

■■ The prosecutor properly discussed the credibility of defendant's testimony by referring to his criminal background. The record shows conflicting accounts of the incident in which defendant's trial testimony differs considerably from his statements made to the police on the date in question. When defendant took the witness stand, his testimony was subject to the jury's scrutiny. The crime for which he was previously convicted, buying and receiving stolen property, reflected adversely on his honesty. Therefore, we find that the prosecutor's comment regarding his prior crime fairly alerted the jury to the possibility of defendant's testimonial deceit.

Defendant argues that the prosecutor's reference to defendant in

opening arguments as having "packed his suitcase" after the incident was unsupported by the evidence, and unfairly pictured him as a fleeing child molester. Our review of the record reveals that this comment, indeed, has no factual basis. However, the trial court acted swiftly in sustaining defendant's objection to this statement. In addition, the court instructed the jury before opening statements and after closing arguments that such comments were not to be considered in their deliberations. Accordingly, the error caused by the statement was cured. *People v. Farmer* (1963), 28 Ill. 2d 521, 192 N.E.2d 916.

In closing arguments, the prosecutor stated: "To sum up, that means that [the child's] * * * case rests in your hands." Defendant asserts that this was an improper emotional plea to the jury, which appealed to their fears and prejudices.

■■ It is proper argument to urge the effective administration of law through vigorous law enforcement. (*People v. Griggs* (1977), 51 Ill. App. 3d 224, 366 N.E.2d 581.) We conclude that this comment was merely a request that the jurors exercise their duty as provided by law. As such, no error was committed.

Defendant's final contention in this appeal is that his sentence is excessive. Defendant proposes that this court, in evaluating his sentence of six years imprisonment, should follow the standards for review recently enunciated in the fourth and fifth districts of the appellate court. Those districts hold that a reviewing court must consider that a defendant's sentence is "rebuttably presumed" appropriate, but that the court can reduce it upon defendant's affirmative showing that the sentence is erroneous in his or her particular situation. *People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59; *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670.

Our supreme court, however, has consistently followed the rule that sentencing is a function of the trial court which will not be disturbed on review absent a clear abuse of discretion. (*People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1194; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) We see no reason to depart from this rule. Turning to the record, we note that defendant was found guilty of fondling the vaginal area of his eight-year-old step-daughter, a crime that the trial judge appropriately found "disruptive of family life and disruptive to the upbringing of any children." Based upon the entire record, we will not disturb the sentence imposed by the trial court.

For the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Defendant's petition for rehearing solely alleges that this court erred by using an improper standard to review defendant's sentence. Defendant was convicted of the offense of indecent liberties with a child (Ill. Rev. Stat. 1977, ch. 38, par. 11—4) and sentenced to six years in the penitentiary. On review, this court upheld the sentence imposed by the trial court as nonexcessive, ruling that the trial court's determination would not be disturbed absent an abuse of discretion. *People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1194; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Defendant now maintains that this court's opinion is inconsistent with a previous decision of this division (*People v. Taylor* (1980), 82 Ill. App. 3d 1075, 403 N.E.2d 607), and with other appellate court decisions (*People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59; *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670), which hold that sentences given under the new Illinois sentencing act (Ill. Rev. Stat., 1979 Supp., ch. 38, par. 1005—1—1 *et seq.*) enjoy a "rebuttable presumption" of propriety, but are subject to modification by the appellate court. Because defendant was sentenced under the new sentencing act, he contends that this court erroneously applied the "abuse of discretion" test in lieu of the "rebuttable presumption" test in reviewing his sentence.

■ While we are aware of the *Taylor* decision and with those of other appellate districts (*Choate*; *Cox*), we hold that defendant's sentence need not be disturbed since it was proper when evaluated under the "rebuttable presumption" as well as the "abuse of discretion" standard.

No further comment is needed as to whether defendant's sentence was justified under the latter test, as this issue was discussed in our original opinion. As to the former, we reiterate that our supreme court has not yet had occasion to consider this standard for reviewing defendants' sentences under the new sentencing act. Nevertheless, applying this standard to the instant appeal reveals that the sentence imposed by the trial court was not excessive.

At the sentencing hearing, the trial court considered defendant's presentence report and the matters presented in aggravation and mitigation as required by statute (Ill. Rev. Stat. 1977, ch. 38, par. 1005—4—1(a)(2), (3)) before sentencing defendant. Furthermore, the court specifically evaluated defendant's opportunity for rehabilitation absent incarceration (see Ill. Const. 1970, art. I, §11), along with the deterrent effect desired by the sentence imposed. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(7).) While the court's recital of compliance with statutory and constitutional criteria does not guarantee against sentencing error, it facilitates our review of the factors relied upon by the trial court in its sentencing decision.

When a defendant is sentenced under the new sentencing act, the trial court's sentence is "rebuttably presumed" to be properly made and for sound reason unless defendant makes an affirmative showing that the sentence imposed is erroneous in his particular situation. (*Choate.*) The crime for which defendant was convicted, indecent liberties with a child, is a Class 1 felony (Ill. Rev. Stat. 1977, ch. 38, par. 11—4) for which the penalty is any term not less than four years nor more than 15 years imprisonment. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(4).) The facts in this case showed that defendant applied vaseline to and fondled the vaginal area of his eight-year-old step-daughter, an act the trial court found to adversely affect "the fundamental basis of a family life." Defendant argues in mitigation that he is a veteran of the Korean War with an honorable discharge from the Marines, and that his sole prior criminal record was a 1970 West Virginia conviction for which he received probation. Also, defendant asserts that the jury's acquittal on the crime of attempted aggravated incest (Ill. Rev. Stat. 1977, ch. 38, par. 8—4) "cleared him" of the allegation that he attempted to have sexual intercourse with his step-daughter.

Based upon our review of the record, we conclude that defendant has failed to rebut the presumption that the sentence was proper. It shall therefore remain intact.

Parenthetically, we observe that defendant's reliance on *People v. Taylor* (1980), 82 Ill. App. 3d 1075, 403 N.E.2d 607, is misplaced. In *Taylor*, defendant challenged neither the appropriate standard for appellate review of his sentence nor its excessiveness. Instead, the appellate court was faced with the question of whether section 5—4—1 of the new sentencing act (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1) requires the trial court to specify on the record the particular evidence, information, factors and other reasons which entered into the sentencing determination. The *Taylor* court held that the trial court's omission of such a statement was erroneous but not fatal to defendant's sentence in the absence of a showing of any prejudice caused by the omission. The court also noted in passing that the new sentencing act caused a change in the standard of review. That case obviously differs from the present one where defendant directly challenges the appropriateness of the standard used in reviewing his sentence.

For the foregoing reasons, the petition for rehearing is denied.

We, therefore, adhere to our original decision and affirm the judgment of the circuit court.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.