(No. 25098.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THEODORE DALPE, Plaintiff in Error.

*Opinion filed June 19, 1939.*

THOMAS J. McCORMICK, (MICHAEL M. O'BARTUCH, of counsel,) for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURT-
NEY, State's Attorney, and A. B. DENNIS, (EDWARD E.
WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and
BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of
Cook county of receiving stolen property consisting of six
fur coats, knowing them to be stolen. Prior to his arrest,
entry was made into his apartment and his store, which
appears to have been in the same building, and a number
of fur coats taken from his vault. He pleaded not guilty
and filed a motion to suppress these fur coats as evidence.
This motion was denied. His first assignment of error
here pertains to his motion to suppress evidence and to re-
turn the coats to him.

Plaintiff in error with his wife, Bernice, lived in an
apartment hotel in the city of Chicago, over the Dalpe-
Riordan Fur Company store. On the morning of January
28, 1938, at the request of one J. R. McWhorter, a postal
inspector for the Federal government, police officers Kelly
and Disseldorf went with McWhorter to the apartment of
defendant. It is admitted that neither McWhorter nor the
police officers had a warrant for the arrest of defendant
nor for the search of his apartment or store. The police
officers testified they did not know why they were requested
to go with McWhorter to defendant's apartment or place
of business and had no reason to believe that he had com-
mitted any crime. McWhorter testified that he did not
apprise the officers of the reason for going there but that
he went because of some information which he had from
a confidential source, concerning a matter which, appar-
ently from what he did testify to, had nothing to do with
the crime here charged. He made no charge against Dalpe
of any crime either then or thereafter, so far as the hear-
ing of this case shows.

A large number of coats, books, papers and other property was taken from the store, and defendant and his wife testified that the drawers of their apartment were searched and property taken. McWhorter testified that he did not know of any search being made in the apartment, while officer Disseldorf testified he did not remember whether he made any search in the apartment or not. The police officers testified that the furs were taken at the order of McWhorter while McWhorter's testimony was that he did not order any one to take the furs out.

According to the evidence for the defense, when the officers arrived at the apartment, defendant and his wife were still in bed; that a knock came at the door and Mrs. Dalpe went to the door and asked who was there; that a voice outside replied "It is the houseman, I want to talk to you a minute." It appears from the evidence that Mrs. Dalpe was in charge of the housemen of this apartment hotel, and defendant and his wife testified that when she turned the doorknob the officers pushed their way in; that they refused to state who they were until Mrs. Dalpe insisted and one of them threw back the lapel of his coat saying: "We are police officers." There is no testimony denying these statements as to how the officers gained admission to the apartment. In fact, the statement of McWhorter on his testimony in the main case, in response to the question whether he knew who opened the door, was: "Well Dalpe or his wife. They were both standing there when he broke it open." The police officers testified that Dalpe opened the door, while defendant, his wife and McWhorter testified that it was Mrs. Dalpe. There is no further explanation on the part of the police officers how admission was gained to the apartment.

Whether defendant demanded that he be shown a search warrant before search was made in the apartment and the store, is a matter of dispute. Both he and Mrs. Dalpe testified that he did demand a search warrant and the officers

replied that they didn't need a warrant. A young man named Lira, and a woman named Gray, who were in the store, both testified to hearing defendant demand such a warrant. This testimony is denied by the officers who stated that Dalpe was willing to proceed to the store and to open the vault.

The position of defendant is that the officers, who had no warrant, violently forced their way into his apartment and forced him to accompany them to his place of business, and compelled him to open a safe in which valuable articles belonging to the corporation were kept, and seized many articles including fur coats, raw furs, books, papers, dressed skins and corporation reports. Defendant also testified that the officers searched his clothes and took from him a billfold and papers and keys to his store. It appears from the evidence that the officers caused the door of defendant's apartment to be opened by subterfuge and gained entrance by pushing their way in. Their entrance into his premises was, therefore, illegal, and all that took place thereafter was likewise illegal. The People's witnesses identified some of the fur coats seized as having been stolen from a store in Champaign, Illinois, during a robbery shortly prior to the time the officers found them in defendant's store.

Defendant contends under his first assignment of error that the search and seizure by a Federal officer accompanied by State officers was unlawful; that the entry into his apartment and store was illegal and that the trial court, in refusing to suppress evidence obtained by such illegal search and seizure, violated section 6 of article 2 of the State constitution providing that the people shall be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and providing that no warrant shall issue without probable cause supported by affidavit particularly describing the place to be searched and the persons or things to be seized, and likewise the fourth amendment to the Federal constitution, which is, in effect, the same.

The question of unlawful search and seizure and the admission in evidence of articles so seized, has been frequently considered by this court. In *People* v. *Castree,* 311 Ill. 392, it was pointed out that not all searches but only unreasonable searches are prohibited;. that warrants may not issue without probable cause supported by affidavit and then only to search the place particularly described; that a search of premises without a warrant is an unreasonable search and an invasion of the right to security guaranteed to the individual by section 6 of the bill of rights, unless on invitation of the owner. In *People* v. *Brocamp,* 307 Ill. 448, the question was whether stolen property which had been obtained by an unlawful search and seizure was admissible in evidence on the trial. It was there held that while the court will not stop the trial of the cause to determine the manner in which evidence has been obtained, even though objection to its competency be based upon the claim that it had been secured by unlawful search and seizure, (*People* v. *Paisley,* 288 Ill. 310;. *Trask* v. *People,* 151 id. 523; *Siebert* v. *People,* 143 id. 571; *Gindrat* v. *People,* 138 id. 103;) however, if the defendant makes timely application to the court, before the beginning of the trial, to suppress such evidence and to return to him the articles seized, the legality of the seizure must, on such application, be fully heard; and if the court erroneously refuses to suppress such property as evidence and order it returned, it is an error for which judgment of conviction must be reversed. To the same effect are *Byars* v. *United States,* 273 U. S. 28, 71 L. ed. 520; *Gouled* v. *United States,* 255 id. 298, 65 L. ed. 647; *Boyd* v. *United States,* 116 id. 616, 29 L. ed. 746.

In the case before us the officers went to Dalpe's apartment without a search warrant and without any reasonable ground for believing he had committed a crime. It follows that any search and seizure made by them, unless it be with his permission, was an illegal search and seizure, and the

property taken should be suppressed as evidence. (*People* v. *Patterson,* 354 Ill. 313; *People* v. *Reid,* 336 id. 421.) The fact that the officer in command of the search and seizure was a Federal officer, in nowise changes the situation, as a Federal officer has no more authority to make a search and seizure without a warrant than has a State officer, and indeed this is as it should be. If property, private documents and the like, can be seized, held and used in evidence against the citizen without compliance with the constitutional safeguards, such safeguards are of no value and may as well be stricken from the constitution. However praiseworthy may be the efforts of officers to bring guilty persons to punishment, they are not to be aided by the sacrifice of any one of the bill of rights, for in such a case the officer becomes a lawbreaker, and the fact that, in many instances, he is beyond the reach of the citizen to punish, makes his actions all the more reprehensible. These sections of the State and Federal constitutions were intended to secure the citizen in person and property against unlawful invasion of the sanctity of his home by officers acting under legislative or judicial sanction. The protection of those sections extends equally against the action of all officers of the law, and when courts sanction proceedings of that sort they are guilty of manifest neglect if not of open defiance of the prohibitions of the constitution intended to protect the people against unauthorized and high-handed action of government agents. (*Weeks* v. *United States,* 232 U. S. 383, 58 L. ed. 652; *Adams* v. *New York,* 192 id. 585, 48 L. ed. 575; *Gouled* v. *United States, supra.*) To the same effect is *Amos* v. *United States,* 255 U. S. 313, 65 L. ed. 655.

An unlawful search upon illegal entry cannot be justified by what is found in the search, but if the search be unlawful in the beginning it is not made lawful by the discovery of contraband articles. *People* v. *Poncher,* 358 Ill. 73; *People* v. *McGurn,* 341 id. 632; *Byars* v. *United States, supra.*

In *Gouled* v. *United States, supra,* it was held that whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch of government by stealth, or through social acquaintance, or through the guise of a business call, and whether the owner be present or not when he enters, any search or seizure subsequently and secretly made in his absence falls within the scope of the prohibition of the fourth amendment to the Federal constitution.

From a review of this record it seems apparent that Mc-Whorter and the police officers procured entry into defendant's apartment by subterfuge and force, and without being invited in by defendant, and this before defendant or his wife could ascertain who they were. They, by subterfuge and trick, succeeded in getting her to turn the knob of the door on the pretense of one of them that he was a houseman. This was clearly an illegal entry and any property taken as a result of a search thereafter, unless it clearly appears to have been with the consent of defendant, should be suppressed as evidence. Illegal entry vitiated the proceeding. The duty rests upon the courts to prevent and discourage a growing tendency on the part of some officers, not only of the Federal government but of the State, to violate the constitutional rights of freedom from unreasonable search, simply on the ground that they feel they have some reason to believe that the person has committed a crime. In this case, so far as the record discloses, not even the excuse of suspicion of any crime committed by Dalpe appears. It should be said for the police officers that they were working entirely under McWhorter's instructions. While McWhorter testified he made the raid on information, neither the source of it nor its character was disclosed on the trial of this case. It seems apparent from this record that the action of these officers constituted a most flagrant case of violation of important constitutional rights of a citizen, and the trial court committed grave

error in failing to sustain the motion to suppress the evidence thus obtained by illegal search and seizure and in allowing the coats seized in defendant's store to be admitted in evidence against him. For this error the judgment must be reversed and the cause remanded for a new trial.

Other questions urged by defendant arise principally out of his contention concerning illegal search and seizure. They are of such a character as not likely to arise on a retrial of the cause and therefore it is unnecessary to further consider them.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*