(No. 53305.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. ARTHUR DUANE HOFFMAN, Appellee.

*Opinion filed April 17, 1981.*

SIMON, J., took no part.
UNDERWOOD and RYAN, JJ., dissenting.

Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield, and Thomas J. Difanis, State's Attorney, of Urbana (Melbourne A. Noel, Jr., Michael B. Weinstein, and Jonathan Strauss, Assistant Attorneys General, of Chicago, Thomas R. LaMont and Donald L. Hays, of the State's Attorneys Appellate Service Commission, of Springfield, and Jay D. Stein, law student, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Gary R. Peterson, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

After a jury trial in the circuit court of Champaign County, defendant, Arthur Duane Hoffman, was convicted of unlawful use of weapons and aggravated assault. Holding that the circuit court erred in denying defendant's oral motion to suppress evidence, the appellate court reversed and remanded (81 Ill. App. 3d 304), and we allowed the People's petition for leave to appeal. The facts are adequately stated in the appellate court opinion and will be repeated here only to the extent necessary to discuss the issues.

In the early morning hours of May 30, 1978, three employees of Richard's Food Store in Champaign were taking a meal break in the store's parking lot. They were approached by defendant, who brandished a small-caliber automatic pistol and threatened at least one of them. When the night manager emerged from the store, defendant put the gun away and ran. Police officers were dispatched to the scene and conducted a search but did not find defendant. An anonymous caller informed police that defendant could be found at 214 Paul Street in the Wilbur Heights area in Champaign. Defendant was not at that address; however, the police were directed to 306 Wilbur Heights Road. When they arrived there, they saw defendant standing in the middle of the street. Defendant ran, the police gave chase, and defendant was caught inside the house trailer in which his parents resided, located at 214 Paul Street.

Officer Paul Meeker of the Champaign police department testified that he remained outside the trailer while Champaign County Deputy Sheriff Morrison went inside. Morrison emerged with defendant in handcuffs a few minutes later. Officer Meeker accompanied defendant to the place where he was first seen, and defendant showed him where to find a .25-caliber automatic pistol.

At the conclusion of Officer Meeker's testimony, defendant's counsel orally moved to "suppress" his testimony and the pistol to which he was led by defendant for the reason that there was "no testimony to establish the defendant was ever advised of his *Miranda* rights." The circuit court held a suppression hearing at which the only witness called was Della Hoffman, defendant's mother. She testified that defendant arrived at her trailer on foot and that "five or six" police officers entered after him. Defendant was drunk. When asked what was said to her son by the officers who pursued him, Mrs. Hoffman said:

> "Asked him where the gun was. Felt over him and he came in, he just kind of fell in a chair and his head against the wall and kind of leaned over the table with his arms hanging down \*\*\*."

Concerning her participation in the questioning, she said: "I just, I told him if he knew, to tell them where it was at." Defendant's father also told him to tell the officers where the gun was. Mrs. Hoffman testified that she did not hear the police warn defendant either that he had a right to remain silent or a right to an attorney. At the conclusion of this testimony, defendant's trial counsel stated that Mrs. Hoffman's testimony was not what she had anticipated it would be and that there would be no argument made on the motion to suppress. Later, defendant's counsel moved to reopen the hearing in order to permit Mrs. Hoffman to testify that defendant was arrested while in the trailer. Both that motion and the motion to suppress were denied. The only evidence offered on behalf of defendant was the testimony of his sister that at the time the offense was committed defendant was drunk and riding with her in her car.

Initially, the People contend that "[t]he trial court does not have discretion to entertain a motion to suppress made during trial." In *People v. Flatt* (1980), 82 Ill. 2d 250, 262, we addressed the question of when a motion to

suppress evidence may be entertained by a trial court:

"At common law, a claim that evidence was obtained by means of an illegal search and seizure had to be raised before trial by means of a motion to suppress or to return the evidence. This requirement arose from a consideration of judicial economy; the court should not be required to interrupt a trial in order to determine the collateral issue of the manner in which the evidence was obtained. (*People v. Braden* (1966), 34 Ill. 2d 516, 520; *People v. Dalpe* (1939), 371 Ill. 607, 611; *People v. Drury* (1929), 335 Ill. 539, 557; *People v. Brocamp* (1923), 307 Ill. 448, 454.) (See 23A C.J.S. *Criminal Law* sec. 1060, at 11 (1961).) By virtue of section 114–12(c) (Ill. Rev. Stat. 1977, ch. 38, par. 114–12(c)), the common law rule was relaxed; the court may, in its discretion, conduct a hearing on a motion to suppress even though the motion is filed after trial has begun, providing that it is alleged that the evidence was illegally seized. Thus, the prohibition against filing a motion to suppress during trial has been relaxed so as not to prevail over the constitutional right to be free from unreasonable searches and seizures."

In our opinion it is also within the discretion of a trial court to entertain a motion to suppress evidence made after trial has begun based on a violation of the principles announced in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. As the Supreme Court said in *Miranda:*

"The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant." (384 U.S. 436, 476, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629.)

To hold that the circuit court was without discretion to hear an untimely motion to suppress in these circumstances would jeopardize the integrity of the constitutional principles upon which *Miranda* rests. The circuit court did not abuse its discretion in hearing defendant's motion to suppress.

The People also contend that "[b]efore the People had an opportunity to present evidence in opposition to defendant's motion to suppress, defendant in effect withdrew his motion. This withdrawal should have precluded the Appellate Court from adjudicating the issue of whether *Miranda* warnings were given to the defendant."

At the conclusion of Officer Meeker's testimony defendant's trial counsel argued in support of her oral motion to suppress that it was obvious from Officer Meeker's testimony that defendant had been arrested while he was inside the trailer and that the People had offered no testimony proving compliance with the requirements of *Miranda*. The People had not rested their case, and the court proceeded with the hearing on defendant's motion to suppress. The testimony of Mrs. Hoffman, defendant's mother, was taken at this time. That counsel chose to make no further argument following Mrs. Hoffman's testimony did not, in our opinion, effect a withdrawal of the motion to suppress. Once raised, the issue became one which the People were required to meet. As the Supreme Court said in *Miranda:* "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612; see also *People v. Morgan* (1977), 69 Ill. 2d 200, 208; *People v. Roy* (1971), 49 Ill. 2d 113, 116.) We hold that defendant sufficiently raised the matter of the People's compliance with the dictates of *Miranda.*

We consider next the People's contention that the circuit court correctly denied defendant's motion to suppress. In support of this contention the People argue that at the time he was questioned about the location of the gun defendant was not in custody or deprived of his freedom of action in any significant way. Thus, the People argue, no *Miranda* warnings were required. In our opinion the circumstances surrounding defendant's statements regarding the location of the gun necessitate the conclusion that he was in custody at the time they were made. Officer Meeker testified that defendant was arrested inside the trailer and was in handcuffs when he emerged. Mrs. Hoffman testified that defendant was followed into the trailer by five or six police officers and patted down for weapons. As did the appellate court, we conclude as a matter of law that defendant was in custody at the time of his questioning. See *People v. Wipfler* (1977), 68 Ill. 2d 158, 168-70, and cases cited therein.

The People do not contend that defendant was in fact given *Miranda* warnings at any time prior to showing the police officer where the pistol was to be found. It is clear from the language of *Miranda* that the procedures therein delineated were not meant to proscribe "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." (384 U.S. 436, 477, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629.) They were designed to advise an individual of his rights while being questioned in the compelling atmosphere which distinguishes a custodial interrogation from a general inquiry. The line between "general investigation" and "custodial interrogation" is incapable of precise demarcation, and it becomes necessary to decide each case on its own particular facts. The only case which has come to our attention which presents a substantially similar state of facts is *United States v. Ganter* (7th Cir. 1970), 436 F.2d 364. In that case a Federal Bureau of Investiga-

tion agent, while conducting an investigation, was disarmed by an unknown assailant. The assailant then fled with the agent's gun. An anonymous informant told authorities that the assailant could be found at a certain address, and when they arrived there they found fresh blood drippings outside that address. After knocking and receiving no response the police kicked in the door and found the assailant facing them. He was placed under arrest and given *Miranda* warnings. When asked to reveal the location of the gun, he responded by telling the officers it was under a couch. At trial a motion to suppress was filed alleging that the gun was the fruit of an illegal interrogation. The defendant contended both that the warning given did not comport with the requirements of *Miranda* and that the government had not met its burden of showing a knowing and intelligent waiver of defendant's rights prior to his statement. In holding that the questioning about the location of the gun was not interrogation, the Seventh Circuit Court of Appeals said:

"In the case before us we do not have any of the factors which brought about the Miranda doctrine. Within minutes after Ganter was given the Miranda warning, other police officers appeared at the front door of the apartment and the only interrogation that occurred was that Ganter was asked where the gun was. \*\*\* Within minutes after the gun was located Ganter was taken from the apartment and apparently no further interrogation occurred.

We do not conceive that the Supreme Court decisions which have been hammered out in cases such as *Miranda,* in the interest of shaping and preserving basic constitutional rights and privileges, should be construed as being intended to pamper or indulge those whose conduct has run afoul of the legitimate public interest of an ordered society

as expressed in our criminal statutes.

In holding that no constitutional rights of Ganter were violated at this juncture, we do so on the narrow basis of the facts here involved. The police were in pursuit of a man justifiably believed to be armed and, in view of his threats to a person who had been identified to him as a peace officer, justifiably believed to be dangerous. Blood had been shed. Even the meekest of law violators are known to the police to commit violent acts when cornered. The event of confrontation in the apartment took place in fleeting moments during which the officers nevertheless still gave Miranda warnings but during which there must have been supreme awareness on their part that a strong likelihood existed that a quick movement on the part of Ganter could result in his being armed with a lethal weapon with which he might very well attempt to gain his freedom.

We do not conceive that under these circumstances the natural inquiry as to the location of the gun constituted *Miranda* proscribed interrogation and we so hold.

We believe as stated by the Supreme Court in *Miranda, supra,* 384 U.S. at 477, 86 S. Ct. at 1629, 'our decision is not intended to hamper the traditional function of police officers in investigating crime.' A contrary result to that which we have here reached would perforce, in our opinion, have a substantially hampering effect." 436 F.2d 364, 370.

Here the police officers pursuing defendant were justified in believing that he was armed and perhaps dangerous. In order to arrest defendant it was necessary for the officers to enter the close confines of a trailer and there confront two additional persons—defendant's

parents—of unknown disposition. Had the pistol been found in the trailer we would hold, as did the court of appeals in *Ganter,* that the natural inquiry as to the location of the gun did not constitute *Miranda* proscribed interrogation. Here, however, defendant was taken into custody inside the trailer and while in custody and handcuffed led the officers to the pistol. In contrast to *Ganter,* where the pistol was apparently found immediately, the pistol here was located after a time interval, the length of which is not shown by this record. Compliance with *Miranda* would require that, as soon as it could be determined that defendant was not armed, he be given *Miranda* warnings. We agree with the appellate court that the act of leading the officer to the place where the pistol was found was conduct of a testimonial nature and, in the absence of *Miranda* warnings, testimony concerning that fact should have been suppressed.

The People contend that even assuming that defendant's leading them to the pistol was the result of their failure to give the *Miranda* warnings the police would have inevitably discovered it and the motion to suppress was therefore properly denied. The record does not show the distance from the place where defendant was arrested to the point where the pistol was found or the period of time which had elapsed from the time that police first saw defendant and the time when they returned to find the pistol. Furthermore, it does not appear from the record whether the pistol was concealed or whether it was found lying on the street or sidewalk. Under the circumstances we find no basis in the record to hold that it was inevitable that the pistol would be found by the police.

Finally the State contends that if this court were to determine that on this record the evidence should be suppressed, the proper disposition would be to remand in order to give the People an opportunity to supplement

the record. The People argue that during the suppression hearing they were prepared to call Deputy Morrison and, if necessary, the defendant's father, both of whom were present in the trailer when *Miranda* warnings may have been given. They argue further that the only reason that the witnesses were not called was that the defendant did not persist in his suppression motion in the circuit court and the court, in denying the motion, saw no reason for the People to go forward with superfluous evidence.

As noted by the appellate court, the record of what occurred in the trailer is incomplete. It would appear that the People should appropriately be given an opportunity to adduce such testimony as may be available to prove that defendant was given *Miranda* warnings prior to making any statement or engaging in conduct of a testimonial nature. The judgments of the appellate and circuit courts will therefore be vacated and the cause remanded to the circuit court of Champaign County with directions to conduct a hearing on the question whether appropriate *Miranda* warnings were given and voluntarily and intelligently waived prior to the time that defendant led the police officer to the place where the gun was found. If no such warnings were given or if defendant's rights were not knowingly and intelligently waived, the circuit court is to grant defendant a new trial. In the event the circuit court finds that such warnings were given and a knowing and intelligent waiver of such warnings made, a new judgment of conviction should be entered.

*Judgments vacated; cause remanded, with directions.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.

MR. JUSTICE UNDERWOOD, dissenting:
I agree that it was within the trial judge's discretion to

entertain the motion to suppress even though defense counsel offered no explanation for the failure to present the motion prior to trial, as should have been done (Ill. Rev. Stat. 1977, ch. 38, par. 114—11(a)). I do not agree that the defendant may now complain of the court's denial of that motion. When the court indicated a willingness to entertain the motion to suppress, defense counsel called only one witness—defendant's mother. At the conclusion of her testimony, defendant rested, and the prosecution made a two-sentence statement pointing out that the defendant had not met his burden and emphasizing that defendant's statement had been prompted by his parents' urgings. Defense counsel then stated: "Judge, that isn't what the testimony I anticipated that witness was going to testify to so I have no argument on it." While that statement may not have been the equivalent of withdrawal of the motion, defense counsel certainly seemed to be acquiescing in the prosecutor's position. Clearly, counsel's statement indicated her belief that the motion should be denied. Having led the court into what my colleagues now categorize as error, defendant should not be allowed to profit from it. *People v. Van De Rostyne* (1976), 63 Ill. 2d 364, 370.

There is an additional reason why defendant's conviction should be affirmed. There exists, in my judgment, not the slightest doubt that the defendant is the individual who threatened the complainants with a gun. Even if that gun, the evidence of where it lay, and the testimony that defendant led the officers to it are all suppressed as the appellate court held they should be, it is, to me, well-nigh incredible that a jury could reach a verdict other than guilty. Three eyewitnesses positively identified defendant. He did not testify, and his only defense was his sister's testimony that she and defendant, who was drunk, had been at her home and were riding around in her car between 1 and 2 a.m. when the offense was committed.

The error, if such it was, in denying the motion to suppress was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Spicer* (1979), 79 Ill. 2d 173, 183.

I would reverse the appellate court and affirm the judgment of the circuit court.

MR. JUSTICE RYAN joins in this dissent.