*In re* D. W., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellant, *v.* D. W., Respondent-Appellee.)

Fifth District    No. 81—668

Opinion filed August 3, 1982.

Gloria Thurston, State's Attorney, of Mound City (Martin N. Ashley and Raymond F. Buckley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Randy E. Blue and Jack W. McGuire, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

D. W., a minor, 16 years of age, was charged in a delinquency petition with burglary and theft. The circuit court of Pulaski County suppressed his confession. The State appeals the suppression order.

On October 17, 1981, Murphy's Service Station in Mound City was burglarized. Shotguns and change from a candy machine, apparently opened by the use of the key, were taken.

At the suppression hearing, Mound City chief of police Raymond Minor testified that he arrested the minor on October 25, 1981, after receiving a tip from an unnamed confidential source who had previously furnished information leading to an arrest. Minor further testified that the key to the candy machine was one of 15 hanging on a rack and that D. W. "hung around" the station. The owner of the station testified that he had opened the candy machine in D. W.'s presence and that he knew where the guns were hidden in the back room of the station.

D. W. was brought in for questioning sometime on October 25, 1981. He was taken to the sheriff's department and was questioned by Chief Minor and the juvenile officer in the presence of his stepfather. He was not advised of his *Miranda* rights. He did not give any statement. He was locked up overnight in the county jail in juvenile detention.

On the morning of October 26, 1981, Chief Minor requested Deputy Sheriff Polley to interview the minor. Prior to questioning the minor, Polley brought D. W.'s mother and stepfather to the sheriff's department. No *Miranda* warnings were given to the minor prior to the time he stated his involvement in the burglary in response to his mother's inquiry.

D. W.'s mother testified that her son was in the office when she got there; that he did not want to talk; that she asked him if he took the guns and he didn't say anything until "I really got to questioning down on him because he didn't really want to open up and I had to get on him. ***." She testified further that her son wouldn't talk to anyone until she got to the sheriff's office and "told him he had to talk to somebody, and I asked him about it and he finally said he did it." She testified that she addressed her son in a loud, scolding voice and that she was upset. Polley then took his written statement and he signed it.

The motion to suppress was based on two grounds: that the arrest was illegal, there being no probable cause, and the confession was involuntary, being the product of improper interrogation.

The court suppressed the confession and in explanation noted:

> "Court finds that in view of the circumstances of the minor's arrest, the fact that he did refuse to make a statement when first questioned by the police, and did not make any statement until his mother was brought in and told him he had to make a statement in the presence of Officer Polley, the statement was not voluntarily made and I'm going to grant the Motion to Suppress."

The trial court's determination of voluntariness of a confession will not be reversed on appeal unless contrary to the manifest weight of the evidence. (*People v. Hawkins* (1972), 53 Ill. 2d 181, 290 N.E.2d 831.) Considering the totality of the circumstances surrounding the minor's arrest, his overnight incarceration, and the insistence by the minor's mother that he tell Deputy Polley what occurred, we cannot say that the court's finding of involuntariness was against the manifest weight of the evidence.

The trial court might well conclude that the presence of D. W.'s

mother and stepfather at the second interrogation on October 26 was more than mere compliance with the notification requirements of section 3.2 of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 703—2) on the part of the authorities. The minor's parents had been notified or in any event knew of his detention at the county jail the day before, as his stepfather was present when he was questioned by Chief Minor on October 25. The questioning and exhortation by the mother quite clearly took place during and as part of the questioning by Deputy Polley as well as the minor's mother and stepfather, unlike the circumstances in *Hawkins* where the father asked the minor what he had done before any conversation between the parents and the officer and before the officer had begun the interrogation of the minor. The trial court might well conclude that Deputy Polley had the mother present for the purpose of persuading her son to tell his involvement in the burglary and that she was used as an agent of the police. (*People v. Hoffman* (1980), 81 Ill App. 3d 304, 401 N.E.2d 323, *vacated on other grounds* (1981), 84 Ill. 2d 480, 419 N.E.2d 1145.) Polley was aware that Chief Minor had questioned D. W. the night before and that the minor had refused to give a statement. Furthermore, no *Miranda* warnings were given by Polley before the confrontation between the minor, his mother and stepfather and Polley. Polley never informed the minor that he need not talk notwithstanding his mother's insistent demands that he tell what happened. The minor had been interrogated the day before, had been locked up overnight and then again interrogated by a different officer, with the assistance of the minor's parents, without the benefit of *Miranda* warnings, according to the view of the record taken by defendant and the State.

The correctness of the trial court's ruling depends largely on a factual determination which it was in a superior position to judge. Polley's testimony was brief and unclear in several aspects. We cannot say its determination was contrary to the manifest weight of the evidence.

Affirmed.

JONES and WELCH, JJ., concur.