2020 IL App (1st) 181217

FIRST DISTRICT,
FIRST DIVISION
September 21, 2020

No. 1-18-1217

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 17 CR 2736 |
| | ) | |
| ARTHUR MARTIN, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1        Following a bench trial, defendant Arthur Martin was convicted of being an armed habitual criminal and possessing a defaced firearm. On appeal, he argues that his trial counsel was ineffective for failing to file a motion to suppress statements made to the police while he was being detained in his home and subjected to the functional equivalent of police interrogation, in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). We disagree and affirm the judgment of the trial court.

¶ 2                                    BACKGROUND

¶ 3        On January 26, 2017, at around 6:50 p.m., police executed a search warrant at defendant's house in Chicago. Defendant, who was 60 years old, lived there with his wife Jacqueline and his adult son, all of whom were at home that evening.

¶ 4        The police team consisted of seven plainclothes officers plus FBI Special Agent Dennaris Coleman. Initially, the officers tried to gain entry to defendant's house via a ruse: they called to

Jacqueline through the kitchen window, telling her that someone had hit her car in an attempt to lure her outside. When that failed, they began forcing their way into the house by prying open the steel security gate on the door. Defendant opened the door for them, asking, "What's up?" According to defendant, the police then "bum-rushed with their guns." Officer Nick Zattair testified that he did not draw his gun and did not believe his fellow officers drew their guns, although they were "of course" armed.

¶ 5        Once inside, the police "secured" the residents, handcuffed defendant and his son, and directed the two of them, plus Jacqueline, to sit on the living room couch. Officer Paul Kirner presented defendant with the search warrant. Officer Damen Balesteri then had a brief conversation with defendant. According to Balesteri, he asked defendant if he had ever been involved when police executed a search warrant on a house. Defendant said no, and Balesteri explained "what was to transpire." During this conversation, the other officers were all nearby, either in the living room or in the adjacent kitchen. They had not yet begun searching the house. Less than two minutes after the officers had secured defendant in the living room, he told Balesteri, "Come on," and led him upstairs to the bedroom he shared with his wife. Defendant then directed Balesteri to a black handgun under a dresser. The gun's serial number was defaced. Balesteri testified the gun was not in a lockbox, nor did he see a lockbox in the house.

¶ 6        Defendant gave a different version of events at trial. He said that while he and his family members were sitting on the couch, the officers were "running around the house" and threatened to "tear this motherf*** up" if he did not tell them where the gun was. (Balesteri denied personally making such a threat.) He further testified that Jacqueline owned a gun that she typically kept in a lockbox. Defendant did not have a key to the lockbox and, in fact, did not know where the lockbox was normally kept. As defendant sat on the couch, Jacqueline

whispered to him the location of the gun, which happened not to be in the lockbox. She was "[c]onfused, scared, [and] discombobulated." Defendant then spoke to the officers and directed them to his wife's gun under their bedroom dresser.

¶ 7      Defendant was brought to the police station, where Kirner and Coleman spoke with him. Coleman advised defendant of his *Miranda* rights, and he signed a form acknowledging that he understood. According to Kirner, defendant then told them that around nine months ago, he purchased the gun from someone in the neighborhood for protection for his family. He denied defacing the gun's serial number. Kirner acknowledged that he did not memorialize defendant's alleged statement in writing, nor did he have any audio or video recording of their conversation.

¶ 8      Defendant, for his part, denied telling Kirner and Coleman that the gun belonged to him or that he purchased it nine months ago. He testified, "I didn't tell them anything."

¶ 9      The parties stipulated that defendant had previously been convicted of unlawful use of a weapon by a felon, as well as manufacture and delivery of a controlled substance.

¶ 10      The trial court found defendant guilty of being an armed habitual criminal and possessing a defaced firearm. He was sentenced to seven years' imprisonment on the armed habitual criminal conviction and three years' imprisonment on the possession of a defaced firearm conviction, to run concurrently.

¶ 11      ANALYSIS

¶ 12      Although defendant received *Miranda* warnings at the police station, he had not yet received those warnings when he directed officers to the gun in his home. He contends that his trial counsel was ineffective for not filing a motion to suppress pursuant to *Miranda*, 384 U.S. 436.

¶ 13       To prove ineffective assistance of counsel, a defendant must show that (1) counsel's performance was objectively unreasonable and (2) defendant was thereby prejudiced. *People v. Patterson*, 2014 IL 115102, ¶ 81 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). For the performance prong, counsel's decision not to file a motion to suppress is typically " 'a matter of trial strategy, which is entitled to great deference.' " *People v. Bew*, 228 Ill. 2d 122, 128 (2008) (quoting *People v. White*, 221 Ill. 2d 1, 21 (2006)). For the prejudice prong, defendant bears the burden of showing "that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15. A reasonable probability is one that undermines confidence in the result of the trial. *People v. Pollards*, 367 Ill. App. 3d 17, 21 (2006) (citing *Strickland*, 466 U.S. at 694).

¶ 14       We begin by determining whether the unargued suppression motion is meritorious. The fifth amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. To safeguard this right, any person subjected to custodial interrogation "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. If a defendant undergoes custodial interrogation without being advised of his *Miranda* rights, any resulting statement cannot be used against him at trial. *Id.* at 479. Our supreme court has held that the act of leading officers to a gun's location is "conduct of a testimonial nature" that is subject to *Miranda*. *People v. Hoffman*, 84 Ill. 2d 480, 490 (1981).

¶ 15       For *Miranda*'s protections to apply, a defendant must be both (1) in custody and (2) subjected to interrogation. *Miranda*, 384 U.S. at 467-68. "Absent the interplay of custody and

interrogation, an individual's privilege against self-incrimination is not threatened." *People v. Villalobos*, 193 Ill. 2d 229, 239 (2000). A defendant is "in custody" when there is either "a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." (Internal quotation marks omitted.) *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011). A defendant is subject to "interrogation" not only when expressly questioned by police, but when police use words or actions that are "reasonably likely to elicit an incriminating response" from the defendant. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); see also *People v. Tayborn*, 2016 IL App (3d) 130594, ¶ 18. By contrast, "preliminary on-the-scene questions" do not constitute interrogation and will not trigger *Miranda*'s protections. *People v. Kilfoy*, 122 Ill. App. 3d 276, 288 (1984).

¶ 16    Here, we find that defendant was not being subjected to interrogation when he directed Balesteri to the gun in his bedroom. According to Balesteri, whose testimony the trial court chose to accept, the only question he asked defendant was whether he had previously been the subject of a search warrant, which is not a question to which one would expect an incriminating response. Balesteri explicitly denied threatening defendant. Additionally, Balesteri had been speaking with defendant for less than two minutes before he volunteered the location of the gun. See *People v. Columbo*, 118 Ill. App. 3d 882, 936 (1983) ("Volunteered or spontaneous statements, as opposed to admissions elicited by custodial interrogation, are expressly excepted from the requirements of *Miranda*." (Internal quotation marks omitted.)).

¶ 17    The circumstances under which defendant was questioned in this case were "[not] characterized by the compulsion, danger of intimidation, or trickery which the *Miranda* rule was designed to eliminate" (*Kilfoy*, 122 Ill. App. 3d at 288). We find that the inquiry made here "appears to fall within the category of preliminary on-the-scene question[ing] which do[es] not

necessitate that *Miranda* warnings be given." *Id.* We further find that defendant has not met his burden of showing that the unargued suppression motion is meritorious. *Henderson*, 2013 IL 114040, ¶ 15; see *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 28 ("Counsel is not required to make futile motions in order to provide effective assistance.").

¶ 18    Additionally, based on the facts adduced at trial, we find no reasonable probability that the trial outcome would have been different had defendant's act of leading the police to the gun been suppressed. *Cf. People v. Maiden*, 210 Ill. App. 3d 390, 396-97 (1991) (*Miranda* violation was harmless error because there was sufficient other evidence to convict defendant); *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 48 (same). Even without this testimonial act, it is undisputed that a gun with a defaced serial number was, in fact, found in defendant's bedroom. Furthermore, there was testimony at trial that, after being brought to the police station and given proper *Miranda* warnings, defendant confessed his ownership of the gun and gave additional details as to how he came to acquire it. Although he denied making such a confession, the resolution of conflicting testimony was for the trial court to determine. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) ("[I]n a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. [Citations.] A reviewing court will not reverse a conviction simply because the evidence is contradictory ***.")

¶ 19    Thus, because defendant suffered no prejudice from trial counsel's decision not to file a motion to suppress, we find his claim of ineffective assistance of counsel to be without merit. *Patterson*, 2014 IL 115102, ¶ 87 (ineffective assistance claims may be decided on *Strickland*'s prejudice prong alone).

¶ 20                              CONCLUSION

¶ 21        For the foregoing reasons, we affirm the judgment of the trial court.

¶ 22        Affirmed.

**No. 1-18-1217**

| | |
|---|---|
| **Cite as:** | *People v. Martin*, 2020 IL App (1st) 181217 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-2736; the Hon. Vincent M. Gaughan, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Anna C. Carlozzi, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Whitney Bond, and Nyshana Sumner, Assistant State's Attorneys, of counsel), for the People. |