The People of the State of Illinois, Plaintiff-Appellee. *v.* Robert Barnett *et al.,* Defendants-Appellants.

(Nos. 60475, 60660 cons.;

First District (1st Division)—November 17, 1975.

Paul Bradley and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Donald M. Devlin, and Eugene J. Rudnik, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

The defendants, Robert Barnett and John Thomas, were convicted of armed robbery. John Thomas was sentenced to the penitentiary for not less than 5 nor more than 8 years while Robert Barnett was sentenced to not less than 6 nor more than 12 years. They appeal their convictions arguing that prosecutorial improprieties denied them a fair trial, that the trial court erred in permitting reference at trial to the prior misdemeanor conviction of a defense alibi witness and that the evidence did not prove their guilt beyond a reasonable doubt.

Joseph Cubeta testified that he was the resident manager of the Diplomat Motel at 5230 N. Lincoln Avenue in Chicago on September 4, 1972. About 11 p.m. Mrs. Cubeta encountered two men as she entered the clerk's office from the adjacent manager's office, one standing close to the door and the other approximately 8 feet away with a gun. Mr. Cubeta who was following his wife into the clerk's office was blocked by the man standing near the door, identified by Mr. and Mrs. Cubeta at trial as defendant Thomas, who told him to "reach."

The man with the gun, identified by both Mr. and Mrs. Cubeta as

Barnett, ordered them behind the counter of the clerk's office, handed Jimmy Cobb, the motel desk clerk,[1] a brown bag and ordered him to put all the paper money into it. Mr. and Mrs. Cubeta testified that there was approximately $95 in paper money. The three employees were then told to lie on the floor and not to move.

Thirty seconds after the men left, Mr. Cubeta called the police. When they arrived, both Mr. and Mrs. Cubeta gave detailed descriptions of the two robbers. The descriptions were based upon the Cubetas' observations during the offense which lasted 7 or 8 minutes and took place in a small room, approximately 6 by 12 feet, lit by eight fluorescent ceiling lights and several other lights.

Several days later, Mr. Cubeta was asked to visit the police department where he was shown books of photographs. He identified a picture of each defendant as the men who had robbed the motel. Mr. Cubeta testified that he did not tell his wife that he had identified any photographs. On the following day, the police brought two books with photographs to the motel and asked Mrs. Cubeta to look through them. She also identified a photograph of each defendant as the two men who committed the robbery. Mr. and Mrs. Cubeta went to the police station again on September 28, separately viewed a lineup and each identified defendants Barnett and Thomas. Mr. and Mrs. Cubeta again identified Thomas and Barnett at trial.

Detective Leonard Muscolino of the Chicago Police Department testified that Mr. and Mrs. Cubeta positively identified Barnett and Thomas from photographs and at a later lineup as well. He also testified that the lighting in the clerk's office at the motel was good.

Sim Runlas testified that he borrowed Mr. Barnett's sister's automobile on September 4 and he and the two defendants drove to Calumet City, arriving about 9:15 p.m., that they entered three different bars, staying in the third bar from about 10 p.m. until 1:30 a.m. to watch the show. The three men returned to Barnett's sister's home about 2 or 2:15 a.m. where they learned that Barnett's mother had been taken to the hospital.

Prior to Runlas testifying, a hearing was held outside the presence of the jury on the admissibility of Mr. Runlas' conviction 5 days earlier for a misdemeanor, receiving stolen property. After argument by counsel, the court ruled that the conviction could be introduced to impeach Runlas.

Defendant Thomas testified that he met Barnett and Runlas at the home of Barnett's sister on the night of September 4, 1972. They drove to Calumet City, arriving about 9:30 p.m. They stayed in a bar on the

---

[1] Cobb was outside this jurisdiction at the time of trial, and did not testify.

"strip" until 1:30 a.m. when they returned to the home of Barnett's sister. On cross-examination, defendant Thomas testified that he was wearing a beige sweater and a blue shirt that evening. At that point, one of the Assistant State's Attorneys burst out laughing. After objection by defense counsel, the trial judge admonished the State's Attorney in chambers that such behavior would not be tolerated because it was "reversible error." The trial then proceeded without further incident with Thomas testifying that he remembered that he was wearing a blue shirt because one of the dancing girls in the bar complimented him on the shirt and asked if she could wear it on stage.

Robert Barnett testified that he left his sister's house with Thomas and Runlas to go to several bars in Calumet City. His testimony substantially duplicated that of Runlas and Thomas with respect to the time they spent there and what they did.

■■ The defendants contend that the evidence presented at trial did not prove their guilt beyond a reasonable doubt. The identification of a single witness is sufficient to support a conviction if the witness is credible and has had an adequate opportunity to observe the person he is asked to identify. (*People v. Stringer* (1972), 52 Ill.2d 564, 569, 289 N.E.2d 631; *People v. Guyton* (1972) 53 Ill.2d 114, 290 N.E.2d 209; *People v. McCray* (1973), 12 Ill.App.3d 935, 299 N.E.2d 375.) There were two identification witnesses in this case and both had the opportunity to observe the defendants for 7 or 8 minutes in an extremely well-lit small room. Within several minutes after the robbers left, both Mr. and Mrs. Cubeta gave accurate descriptions of them to the police officers who had arrived on the scene. Several days later both Mr. and Mrs. Cubeta separately identified pictures of Barnett and Thomas as the offenders. Later, they separately identified both defendants in a lineup and in the courtroom. Their identification testimony was clear and convincing, unshaken on cross-examination and supported by an excellent opportunity to observe the defendants at the time of the offense.

■■ The first prosecutorial impropriety of which the defendants complain was an attempt by the State's Attorney to insinuate to the jury by improper questions that Mr. Runlas drove the "get-away" car for the defendants on the night of the robbery. Though there was no evidence presented to support this theory, the State's Attorney twice asked Mr. Runlas if he wasn't sitting in a Buick (presumably belonging to Barnett's sister) with the motor running in the vicinity of the motel at 11 p.m. This line of questioning was improper and the trial court correctly sustained the immediate objection of defense counsel. Later when examining defendant Barnett, the State's Attorney, obviously attempting to

imply that Runlas participated in the robbery, asked Barnett if the driver of the "get-away" car received the same cut as the men inside the establishment. The immediate objection by counsel for the defendants was again sustained by the trial court.

■■ It is error for the State's Attorney to propound questions which imply the existence of facts which he cannot support by credible evidence. (*People v. Nuccio* (1969), 43 Ill.2d 375, 253 N.E.2d 353.) A defendant has a right to trial by jurors who have heard only competent evidence and to have their witnesses appear without unnecessary disparagement of their credibility. (*People v. Galloway* (1956), 7 Ill.2d 527, 131 N.E.2d 474.) Objections to all of the improper questions were sustained by the trial court. Though the defense did not request that the trial court immediately instruct the jury to disregard the questions, the jury was instructed to disregard questions to which objections were sustained after the close of the evidence. In this case, the immediate objections by defense counsel, properly sustained by the trial court, coupled with the instruction to the jury to disregard such questions sufficiently blunted any possible harm to the defendants caused by the improper questions of the State's Attorney.

The defendants also contend that their right to a fair trial was prejudiced when the Assistant State's Attorney broke into derisive laughter while defendant Thomas was testifying. Defense counsel objected and the trial court held a conference in chambers where he admonished the State's Attorney, and warned him that such behavior was reversible error and was not to be repeated. The court's timely amonition was apparently taken seriously for laughter at witnesses was not repeated by the prosecutor.

■■ Though we do not condone this behavior, neither do we find that the single brief outburst of laughter in this case denied the defendants a fair trial. The testimony which apparently provoked the prosecutor's laughter concerned the clothing Barnett wore on the night of the offense. This was not crucial testimony concerning whether he was at the motel or in Calumet City at the time of the offense and would not be likely to appear to the jury as a necessary part of his alibi, but only as a minor question concerning the color of his clothing. The defendants were able to present their alibi defense without further incident. Moreover, the trial court's remarks to the prosecutor in reprimanding him indicate that the court considered ordering a mistrial, but apparently decided that the error was not of such magnitude to require such action. Neither apparently did defense counsel believe the prejudice done to be sufficient to warrant moving for a mistrial, even after the trial judge pointed out that he thought the prosecutor's behavior was serious. Where

the comments or actions of the prosecutor cannot be said to represent a material factor in the conviction and it cannot be said that the verdict would have been different; the error should not be a basis for reversal. *People v. Skorusa* (1973), 55 Ill.2d 577, 304 N.E.2d 630; *People v. Terrell* (1974), 18 Ill.App.3d 911, 310 N.E.2d 791.

■■ The defendants also cite as error the State's question on cross-examination of Barnett inquiring how long he had been on welfare, after he had testified on direct examination that he was a college student on welfare at the time of the offense. The court sustained the defense objection, but the State continued that line of questioning by asking Barnett when he last held a job. It is not necessarily prejudicial error to cross-examine a defendant concerning the last time he held a job. (*People v. Riles* (1973), 10 Ill.App.3d 772, 295 N.E.2d 234.) The defendant himself volunteered that he had been on welfare since 1971. The trial court sustained the objection to the first question concerning welfare, and since the defense did not object to the second inquiry, any impropriety in the question was waived.

Finally, the defendant argues that the trial court erred in admitting a prior misdemeanor conviction of the defendant's alibi witness, Sim Runlas, for receiving stolen property. Section 155—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, § 155—1) permits impeachment of a witness by evidence of a criminal conviction. Prior to *People v. Montgomery* (1971), 47 Ill.2d 510, 268 N.E.2d 695, this statute was interpreted to permit only the use of convictions of felonies or infamous crimes. (See *People v. Birdette* (1961), 22 Ill.2d 577, 177 N.E.2d 170; *People v. Smith* (1966), 74 Ill.App.2d 458, 221 N.E.2d 68.) In *Montgomery*, the Supreme Court reviewed this statute and the subject of impeachment of witnesses by the use of prior convictions and directed that in future cases the provisions of Rule 609 approved by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States should be followed by courts in Illinois. That rule sets three conditions for admission of a criminal conviction for impeachment purposes: that the date of conviction or release from confinement, whichever is latest, must be not more than 10 years prior to trial; that the crime of which the witness was convicted must be punishable by death or imprisonment in excess of 1 year or involve dishonesty or false statement; and that the trial judge must determine, in his discretion, that the danger of unfair prejudice by use of the evidence of conviction does not substantially outweigh its probative value.

The defendant urges that *Montgomery* permits the use of felonies or infamous crimes for impeachment purposes, but was not intended to al-

low the admission of misdemeanor convictions. This contention is supported by cases in other districts in this State which appear to assume without discussion that even under *Montgomery* only felonies or infamous crimes are admissible. See *People v. Partee* (1974), 17 Ill.App.3d 166, 308 N.E.2d 18, and *People v. Cassman* (1973), 10 Ill.App.3d 301, 293 N.E.2d 710 (holding without discussion of *Montgomery* that a defendant can only be impeached by evidence of a conviction of a prior felony or infamous crime), and *People v. Cox* (1972), 8 Ill.App.3d 1033, 293 N.E.2d 727.

However, we construe Rule 609 referred to in *Montgomery* to confer upon the trial court the discretion to admit evidence of crimes involving dishonesty or false statements, which could include misdemeanors or crimes punishable by imprisonment for less than 1 year, if the other requirements of the rule are met. See *People v. Nelson* (1975), 31 Ill. App.3d 934, 335 N.E.2d 79; *People v. Kreisa* (1974), 24 Ill.App.3d 832, 321 N.E.2d 322 (abstract opinion); *People v. Barksdale* (1974), 24 Ill. App.3d 489, 321 N.E.2d 489.

■■■ In this case, Runlas' conviction was only 5 days old and was for receiving stolen property. Although the State agrees that this offense was a misdemeanor, the nature of the offense involved dishonesty. Its admission was, therefore, not in conflict with the provisions of Rule 609. After argument by counsel, the trial judge ruled that Runlas' conviction had a bearing on his truth and veracity, and admitted the evidence of his conviction to impeach him. In so doing, the court did not abuse its discretion.

Judgment affirmed.

BURKE, P. J., and GOLDBERG, J., concur.