THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STANLEY GUSTOWSKI, Defendant-Appellant.

First District (2nd Division)   No. 80-1935

Opinion filed December 22, 1981.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Christine A. Campbell, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant was charged in a two-count complaint with possession of controlled substances, namely Phencyclidine (sometimes hereinafter PCP) and Valium. (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b).) On the State's motion prior to trial, the count pertaining to possession of Valium was *nolle prossed*. A jury found defendant guilty under the remaining count, and he was sentenced to serve 2 years in the penitentiary. Defendant appeals.

The issues presented for our consideration on appeal are whether; (1) a question asked on cross-examination of defendant as to whether he was talking with a friend near the scene of the arrest about "angel dust" denied him a fair trial; (2) the prosecutor in having asked defendant if he had ever seen "tinfoil packets like this before," and had "never prepared tinfoil packets in that manner" denied him a fair trial; (3) an adequate chain of possession was established connecting defendant to the PCP; and (4) defendant was proved guilty of possession of a controlled substance beyond a reasonable doubt.

At trial, the following evidence was presented for the State. Chicago Police Officer Paul Sarpalius testified that at about 8:40 p.m. on August 24, 1979, he and his partner Officer Daniel Lukensmeyer saw defendant with five other men in the 4700 block of S. Winchester Avenue. Sarpalius knew defendant by name. As the officers approached defendant the other men dispersed and defendant turned to face the officers. Defendant then dropped a plastic bag to the ground. The bag contained blue, pink and white pills and "some" tinfoil packets. The police report recorded that the bag dropped from defendant's left hand, although at trial Sarpalius stated that it dropped from his right hand.

After he picked up the plastic bag and examined its contents, he screamed to his partner, "I have got the dope, grab him." He placed the bag in his shirt pocket. He also searched defendant, but found nothing. When he arrived at the police station, he reopened the bag and inventoried its contents. There were 32 pills in different colors and six tinfoil packets containing white powder. These objects were placed in a narcotics envelope on which he wrote his initials and star number. The tinfoil packets were not marked. After the envelope was sealed, it was put in a safe at the police station. The testimony of Officer Daniel Lukensmeyer substantially corroborated the testimony of Sarpalius.

Linda O'Bannon, chemist for the Chicago Police Department, testified that on August 29, 1979, she received a sealed narcotics envelope

from her supervisor for chemical analysis. She subjected the white powder in one of the tinfoil packets to a variety of tests involving the use of cobalt thiocyanate, and ultraviolet and infrared light. On the basis of this analysis, she concluded that the powder contained phencyclidine. On cross-examination, defense challenges to her status as an expert were overruled.

Defendant testified that on August 24, 1979, at about 9:30 p.m. he saw Lukensmeyer and Sarpalius pull up in a squad car. From a distance of 10 to 15 feet Sarpalius said, "Stanley, come here, I want to talk to you." The entire block was full of cans, paper, candy wrappers and cigarette butts. He did not physically possess or drop a plastic bag, pills or tinfoil packets. He did not see any other person drop these objects. He saw the bag containing the pills for the first time at the police station but did not see the six packets of tinfoil until a "little while ago when my attorney put them in front of me."

Other evidence will be considered in the body of the opinion.

I

Defendant argues that prosecutorial misconduct during cross-examination denied him a fair trial. He contends that the prosecutor erred when he asked defendant: "Q. * * * Were you and your friend talking about angel dust in front of that location?" The trial court immediately sustained defense counsel's objection. Defendant maintains that this question referred to matters outside the record, because, prior to this question, nobody had suggested that "angel dust" was found. In addition, he contends that the use of the term "angel dust" was inflammatory and implied that he was a seller of narcotics. Defendant also assigns error to the following question by the prosecutor: "Q. Well, Mr. defendant, have you ever seen tinfoil packets like this before?" Also, "Q. You have never prepared tinfoil packets in that manner, have you?" Defense objections were sustained promptly to each question. Defendant urges that these questions implied that he was engaged in drug trafficking.

■■ The State responds that any prosecutorial misconduct was harmless in view of the sustained objections and the "overwhelming" weight of the evidence establishing defendant's guilt. The State observes that the reference to "angel dust" was a single, isolated remark. Also, the State denies that the other remarks of the prosecutor implied that defendant was involved in other crimes. It is apparent, however, that such questions were improper: they all exceeded the scope of direct examination; and, the last two implied that defendant previously possessed controlled substances, similar to PCP. Any harm to defendant was diminished by the immediate objections of counsel, which were sustained by the court in timely fashion. Although the defense did not request the trial court to instruct the

jury to disregard these questions immediately after the objections were sustained, an instruction to the jury properly directed them to disregard such questions. Under these circumstances, any prejudice which might otherwise have affected defendant by virtue of the unacceptable questions was dissipated. *People v. Farmer* (1963), 28 Ill. 2d 521, 524, 192 N.E.2d 916; *People v. White* (1980), 86 Ill. App. 3d 19, 28, 30, 407 N.E.2d 572; *People v. Barnett* (1975), 34 Ill. App. 3d 174, 178, 340 N.E.2d 116.

## II

Defendant next argues that the State failed to demonstrate a positive link between defendant and the contraband, attaching great significance to police failure to mark the tinfoil packets and Officer Sarpalius being unable to state for a fact whether the powder or packets had been altered in any fashion.

The record is to the contrary. Officer Sarpalius testified that he picked up the plastic bag he saw dropped by defendant. Sarpalius carried the plastic bag in his pocket to the police station where he inventoried its contents observing six tinfoil packets containing white powder. The contents of the bag were placed in a narcotics envelope. After sealing and marking the envelope with his initials and star number, he placed the envelope in a safe at the station. He identified State Exhibit No. 3 as the same narcotics envelope he filled out on the day of the incident and the tinfoil packets as the same ones which were inventoried.

O'Bannon testified that she received State Exhibit No. 3 from her supervisor in a sealed condition. She cut open the envelope and inspected the contents to verify that they matched the inventory description, which they did. She tested the contents and concluded that the substance contained phencyclidine. After placing the contents back into the original narcotics envelope, she initialed and resealed the envelope.

■■ The State need not exclude every possibility that the evidence may have been tampered with, but rather that there is a reasonable probability that the evidence has not been changed or substituted. (*People v. Grayson* (1980), 89 Ill. App. 3d 766, 770, 411 N.E.2d 1177; *People v. Madden* (1978), 57 Ill. App. 3d 107, 111, 372 N.E.2d 851.) A sufficient chain of possession manifestly was established connecting the substance identified as phencyclidine to defendant here, and that evidence was properly received.

## III

The final argument articulated by the defense is that defendant was not proved guilty beyond a reasonable doubt because the officers' testimony lacked credibility.

Defendant correctly observes that police testimony at trial did vary

with their prior testimony at the preliminary hearing. At that hearing, Officer Sarpalius testified that other people were 10 to 15 feet south of defendant, whereas at trial the people were described as being 3 house-lengths or 75 feet south of defendant when the bag was dropped. At the preliminary hearing, Sarpalius testified that defendant was 35 feet away from him the moment the bag was dropped; in contrast, at trial his testimony concerning this distance varied from 20 to 35 feet. At the pretrial hearing on defendant's motion to suppress, Officer Lukensmeyer testified that defendant was 30 to 35 feet away at the instant the package was dropped; at trial, however, defendant was 15 to 20 feet away when defendant turned around, looked in his direction, and dropped the package. Although Lukensmeyer's police report said defendant released the bag with his right hand, the police officers at trial claimed defendant's left hand was the culprit.

■■ Notwithstanding these variations in testimony, the evidence was not so improbable, unsatisfactory or inconclusive as to justify setting aside defendant's conviction. (*People v. Coulson* (1958), 13 Ill. 2d 290, 296, 149 N.E.2d 96; *People v. Platter* (1980), 89 Ill. App. 3d 803, 817, 412 N.E.2d 181; *People v. Lindsey* (1979), 73 Ill. App. 3d 436, 447, 392 N.E.2d 278.) It is the jury's function to resolve questions involving the credibility of witnesses, since it has the opportunity to observe witnesses' demeanor while they testify. (*People v. Ellis* (1978), 74 Ill. 2d 489, 496, 384 N.E.2d 331.) The discrepancies were observed by the jury, which reasonably could have found them immaterial in view of the totality of circumstances surrounding the incident.

For the reasons set forth above, the jury's verdict cannot be disturbed. Defendant's conviction will be affirmed accordingly.

Affirmed.

DOWNING and PERLIN, JJ., concur.