THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE ROUNDTREE, Defendant-Appellant.
First District (2nd Division)   No. 84—2353

Opinion filed August 27, 1985.

Julius Lucius Echeles, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Peter D. Fischer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant Willie Roundtree was charged by indictment with possession of a controlled substance containing cocaine with intent to deliver. He waived a jury trial. The court found him guilty and sentenced him to nine years and a fine of $305,970. The court also denied defendant's petition to return his cash bond deposit, which was assigned to his attorney in payment for professional services.

The issues raised on appeal are: (1) whether defendant's oral statement made while under arrest, in custody and without a *Miranda* warning was properly admitted into evidence; (2) whether the statutory provision requiring that a drug offender pay a fine at least equivalent to the street value of the substance found is a constitutional exercise of the legislature's right to set penalties; (3) whether the statutory fine was properly imposed; (4) whether application of

defendant's bond deposit toward payment of the fine was mandated by statute and took precedence over the assignment of the deposit to defense attorney for payment of legal fees; and (5) whether the trial court erred in refusing to permit defendant to use a post-*Miranda* written statement which he made to the police.

On December 31, 1982, at about 7:50 a.m., State trooper R. A. Martinez testified that he was in a marked squad car that was parked on the right shoulder of the southbound lanes of Interstate Highway 94, monitoring traffic. He heard the screeching of brakes, then noticed that his squad car had been hit from the rear by a white 1971 Cadillac. He radioed his station of the incident and that he was exiting his vehicle. As he walked toward the Cadillac, he heard a gunshot and saw a hole in the windshield. Trooper Martinez saw two men struggling in the front seat. The passenger in the rear seat unlocked the passenger door; Trooper Martinez opened the door and trained his weapon on the men in the front seat, who were struggling over a gun. When the two continued their battle despite the officer's command to drop the weapon, Trooper Martinez returned to his squad car and radioed for assistance.

Trooper Martinez had his weapon in hand and trained on the driver and passenger until assistance arrived. Two off-duty officers from other jurisdictions saw Trooper Martinez as they passed and came to his aid. The driver and passenger then stopped their struggle for the gun.

Defendant was "taken into custody" by the two off-duty officers. Parker, the front seat passenger, followed Trooper Martinez' order to put the weapon on the dashboard and exit as the trooper's gun was still trained on him. The defendant and Parker were placed on the ground, patted down for weapons, and placed into handcuffs. The officers also arrested Cynthia Johnson, the woman who was in the back seat of the car.

After recovering and unloading the gun, Trooper Martinez searched the front and rear passenger areas and found an aluminum suitcase on the rear seat. Trooper Martinez testified that after discovering the suitcase, "I asked, in general, to the three defendants, who owned the suitcase." Defendant Roundtree objected because no proper foundation was laid: he was in custody and no *Miranda* warnings were given. The court overruled the objection on the grounds that it was asked as part of an investigatory stage rather than a custodial stage. Trooper Martinez testified that defendant said, "It's mine." Again a defense objection was overruled. An examination of the contents of the case revealed laundry plus a scale, weighing tray,

silver spoon and a plastic bag of a white, powdery substance, later identified as cocaine.

There was no evidence that a *Miranda* warning was given at the scene of the collision. The vehicle was impounded, and $2,167 was taken from defendant Roundtree and inventoried. The three defendants were taken to the Calumet City police department.

Trooper Martinez then warned defendant of his constitutional rights at the police station where a written statement was taken from defendant. The court sustained the State's relevancy objection when defendant sought to introduce the statement and cross-examine Trooper Martinez regarding the contents of the statement. Defendant's offer of proof was also denied.

Trooper Martinez also testified that after the collision and after the gunshot, he was not just arresting these people for some traffic violation. He asserted that shooting from inside the Cadillac was also a violation of the law.

Defendant, Parker and Johnson were charged in a single indictment with possession of a controlled substance with intent to deliver. The trial court acquitted Parker and Johnson, but found defendant guilty as charged.

I

In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the United States Supreme Court ruled that the criminal defendant's privilege against compulsory self-incrimination could be properly protected only if he were warned of the privilege before being subjected to custodial interrogation. *Miranda* requires that:

> "He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. 436, 479, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 1630.

The required warning must be given "when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way." (384 U.S. 436, 477, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629.) The fifth amendment "serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." (384 U.S. 436, 467, 16 L. Ed. 2d 694, 719, 86 S. Ct. 1602, 1624.) The consequences of failing to give

the required warning is clear. "[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." 384 U.S. 436, 479, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 1630.

*Miranda* warnings need to be administered after a person is taken into custody or his freedom has otherwise been significantly restrained. (*Oregon v. Elstad* (1985), 470 U.S. ___, 84 L. Ed. 2d 222, 105 S. Ct. 1285.) If the police ask questions of a suspect in custody without administering the required *Miranda* warnings, *Miranda* dictates that the answer received be presumed compelled and that it be excluded from evidence in the State's case in chief. (470 U.S. ___, 84 L. Ed. 2d 222, 231, 105 S. Ct. 1285, 1292.) The initial inquiry in the present case, therefore, is whether defendant was in custody when Trooper Martinez propounded his question as to the ownership of the suitcase.

The Illinois Supreme Court has ruled that, as a matter of law, a person who is arrested and handcuffed is in custody and that such an arrest activates a person's *Miranda* rights. (*People v. Hoffman* (1981), 84 Ill. 2d 480, 487, 419 N.E.2d 1145.) In the present case, the defendant was under arrest and handcuffed before Trooper Martinez asked the defendant about ownership of the suitcase.

The State argues that the question falls within the "public safety" exception to *Miranda* warnings announced by the Supreme Court in *New York v. Quarles* (1984), 467 U.S. 649, 81 L. Ed. 2d 550, 104 S. Ct. 2626. In *Quarles*, the police were informed that an armed rapist had entered a nearby supermarket. The police spotted a man matching the description of the rapist in the supermarket and apprehended him. An officer frisked the man and found an empty holster. After handcuffing the man, the officer asked where the gun was, and the man nodded in one direction and said, "The gun is over there." The court reasoned that the police were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. Because the concealed gun posed a danger to the public safety, the court created a limited exception to *Miranda*, holding that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." 467 U.S. 649, 657, 81 L. Ed. 2d 550, 558, 104 S. Ct. 2626, 2633.

The State, relying on *Quarles*, argues that the question asked by Trooper Martinez was only meant to secure control of the scene

and was not designed to elicit testimonial evidence from defendant. However, the record establishes that all the suspects in the present case were handcuffed and positioned away from the car and its contents when Trooper Martinez asked the question. It is evident that Trooper Martinez had secured control of the scene before he asked the question. Furthermore, the record does not support the inference that either the suitcase or its contents posed a threat to the public safety or that Trooper Martinez perceived such a threat. Thus, the limited *Quarles* exception to *Miranda* is inapplicable under the facts of this case, and defendant's response to Trooper Martinez' question should have been excluded from evidence.

The State argues that even if it was error to admit defendant's pre-*Miranda* response, the error was harmless because the testimony of Trooper Martinez established defendant's guilt without consideration of the questioned response. In support of this argument the State presents the theory of constructive possession of a controlled substance for the first time on appeal. Although the State refers to other testimony by Trooper Martinez which establishes defendant's guilt, the State does not cite supporting testimony, nor does a review of the record disclose the presence of other testimony establishing defendant's guilt under a constructive possession theory. Because constitutional rights as enunciated in *Miranda* are at issue in the present case, for the error to be harmless it must be harmless beyond a reasonable doubt. (*People v. Szerletich* (1980), 86 Ill. App. 3d 1121, 1129, 408 N.E.2d 1098.) If it can be determined beyond a reasonable doubt that the error in admitting defendant's pre-*Miranda* response did not contribute to his conviction, a reversal is not warranted. *People v. Calderon* (1981), 101 Ill. App. 3d 469, 478, 428 N.E.2d 571.

To sustain a conviction on the basis of constructive possession of a controlled substance, it must be shown that defendant, although not having personal, physical dominion, knows of the presence of the substance and has the intent and capability to maintain control and possession of it. (*People v. Turnbeaugh* (1983), 116 Ill. App. 3d 199, 205, 451 N.E.2d 1016, *appeal denied* (1983), 96 Ill. 2d 564.) Thus, defendant must be shown to have exclusive control of the area where the controlled substance was located. *People v. Martine* (1984), 121 Ill. App. 3d 793, 798-99, 460 N.E.2d 456.

■ In viewing the record, particularly the location of the closed suitcase containing the controlled substance and the proximate presence of the passengers thereto, as well as the failure of the State to adduce evidence as to defendant's knowledge, we find that defendant's constructive possession was not established beyond a reasonable

doubt. See, *e.g., People v. Gore* (1983), 115 Ill. App. 3d 1054, 1058-59, 450 N.E.2d 1342, *appeal denied* (1983), 96 Ill. 2d 545.

## II

■ Defendant challenges the portion of his sentence imposing a fine of $305,970. Section 5—9—1.1 of the Unified Code of Corrections, under which the trial court imposed the fine, reads in pertinent part:

"When a person has been adjudged guilty of a drug related offense involving possession *** of *** a controlled substance as defined in *** the Illinois Controlled Substances Act, as amended, in addition to any other penalty imposed, a fine shall be levied by the court at no less than the full street value of the *** controlled substances seized.

'Street value' shall be determined by the court on the basis of testimony of law enforcement personnel and the defendant as to the amount seized and such testimony as may be required by the court as to the current street value of the *** controlled substance seized." Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.1.

On appeal, defendant argues that the statute is void for vagueness in violation of due process because the terms "full street value," "street value" and "current street value" are nowhere defined in the statute. However, a review of the record indicates that this argument was not raised during any of the trial court proceedings. Therefore, defendant did not properly preserve this issue for review. See, *e.g., People v. Taylor* (1982), 107 Ill. App. 3d 1019, 1023, 438 N.E.2d 565.

## III

■ Defendant contends that the method of calculation used to determine the street value of the cocaine seized is violative of due process.

At a presentence hearing, the State called Officer Ronald J. Michalski, South Area Supervisor for the Northeast Metropolitan Enforcement Group (MEG) and a veteran of more than 500 narcotics arrests. He testified that he had been involved in 300 to 400 purchases of controlled substances and that 60% to 70% of these operations involved cocaine. He testified that he was familiar with the present street value of cocaine and that, to make the most profit, cocaine would be sold at the gram level and adulterated to a 10% purity. Defendant moved to strike this testimony on the basis that it consisted of supposititious conclusions, hypothetical questions and guesswork. The court found that the testimony was relevant as an opinion

of the street value.

A trial court, in conducting a sentencing hearing, is not limited to considering evidence that would be admissible only during trial, but can exercise wide discretion in the types of evidence used to assist it in determining the punishment to be imposed. (*People v. Ruiz* (1982), 94 Ill. 2d 245, 267-68, 447 N.E.2d 148, *cert. denied* (1983), 462 U.S. 1112, 77 L. Ed. 2d 1341, 103 S. Ct. 2465.) However, the evidence introduced must be competent and material. (*People v. Williamson* (1979), 69 Ill. App. 3d 1037, 1040, 388 N.E.2d 240.) In the present case, we find that Officer Michalski's testimony was admissible as competent and material evidence. The record establishes that he had sufficient special knowledge of and familiarity with controlled substances, particularly cocaine, to enable him to assist the court in its determination of the proper sentence to impose in the present case.

▮ Defendant next contends that the determination that the cocaine seized had a 94% purity was inherently unreliable because the sample tested was unreasonably minute, the package containing the cocaine was leaking and no chain of possession was established.

At defendant's sentencing hearing, the State called Devendra Trivendi, a forensic chemist with the Illinois Department of Law Enforcement. He testified that the cocaine seized was 94% pure, according to a test he performed on 80 milligrams taken from a corner of the package containing the cocaine. At this hearing, the package was evidently leaking and left a residue on the bench. Trivendi testified that when he received the evidence to conduct the purity test, it was in a sealed condition. However, he never testified to the chain of possession from the date of the purity test to the sentencing hearing.

Defendant's contention as to the amount tested is misplaced. A chemist need not analyze every particle of a substance admitted into evidence in a criminal prosecution in order to give an opinion as to the whole amount. (*People v. Games* (1981), 94 Ill. App. 3d 130, 131, 418 N.E.2d 520.) The fact that only a portion of a particular substance is positively identified as containing a controlled substance goes only to the weight to be given such testimony, not its admissibility. *People v. Newell* (1979), 77 Ill. App. 3d 577, 579, 396 N.E.2d 291, *appeal denied* (1980), 79 Ill. 2d 628.

▮ Defendant contends that the evidence may have been contaminated due to the leak in the package. The chemical analysis of a controlled substance will not be held invalid solely because of a speculative possibility that the substance under analysis could have been contaminated. *People v. Schlig* (1983), 120 Ill. App. 3d 561, 567, 458 N.E.2d 544.

■ Defendant argues that a proper chain of custody was not established over the evidence in issue. As noted above, admission of evidence at a sentencing hearing is somewhat more lenient than at trial, but the evidence must be competent and material. (*People v. Williamson* (1979), 69 Ill. App. 3d 1037, 1040, 388 N.E.2d 240.) Trivendi testified to a proper chain of custody of the evidence up to the time he performed the purity test. Thus, a proper chain of custody over the evidence at all critical times was established. The State need not exclude every possibility that the evidence may have been tampered with or substituted; rather, the court must be satisfied that, to a reasonable probability, the evidence has not been changed in any important aspect. *People v. Gustowski* (1981), 102 Ill. App. 3d 750, 753, 430 N.E.2d 317.

Defendant contends that no proof exists that either Officer Michalski or the trial court possessed the requisite expertise or qualifications to perform the mathematical calculations necessary to arrive at the fine. However, a review of the record indicates that this specific objection was not made during the trial court proceedings. It is well established that a ground of objection not presented during the trial court proceedings cannot be urged on appeal on an entirely different basis than in the trial court. *People v. Del Percio* (1983), 118 Ill. App. 3d 539, 542, 454 N.E.2d 1169.

## IV

■ The trial court ordered that defendant's bond be applied toward payment of the fine and denied defendant's petition to turn the bond over to defense counsel. Defendant argues that the trial court acted improperly in this regard because the court had earlier recognized the assignment of the bond to defense counsel and had issued an order that the bond be turned over to defense counsel. Defendant further argues that the assignment was wholly effectuated prior to the imposition of the fine and that the court was without jurisdiction to modify its earlier order recognizing the assignment because that order was issued more than 30 days before defendant's sentencing. We disagree.

As in other assignments, defense counsel stands in the shoes of his assignor and thus acquires only those rights which his assignor has in the bond. (*People v. Kleba* (1982), 110 Ill. App. 3d 345, 366, 442 N.E.2d 605.) Because defense counsel, in the present case, only acquired defendant's refund rights, which were subject to the fine, the trial court properly applied the bond to payment of the fine. Moreover, the trial court had not lost jurisdiction of its prior order because

it had not yet imposed its sentence. (See, *e.g., People v. Talach* (1983), 114 Ill. App. 3d 813, 818, 448 N.E.2d 638.) Therefore, the action of the trial court in applying defendant's bond to payment of the imposed fine was proper.

## V

As a result of our holding that the defendant's pre-*Miranda* oral statement is not admissible, there is no need to consider the question regarding the proper use of the post-*Miranda* written statement.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STAMOS, P.J., and HARTMAN, J., concur.